**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| G&G Closed Circuit Events LLC, | No. CV-24-00573-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Juan Acosta, et al., | |
| Defendants. | |

Plaintiff G&G Closed Circuit Events LLC filed its complaint in March 2024. (Doc. 1.) The complaint alleges G&G had exclusive rights to exhibit a boxing match and defendants Juan Acosta and La Costa Restaurant LLC publicly exhibited that boxing match without obtaining permission from G&G. (Doc. 1 at 6-7.) Defendants were served on July 3, 2024, but did not respond to the complaint. (Doc. 13, 14). Immediately after the deadline for defendants to respond, G&G applied for defendants' defaults. (Doc. 15.) On July 25, 2024, the Clerk of Court entered defendants' defaults. (Doc. 16.) G&G did not take additional action at that time.

After waiting thirty days for G&G to act, the court ordered G&G to file its motion for default judgment no later than September 3, 2024. (Doc. 18.) G&G waited until the deadline to file its motion for default judgment. (Doc. 19.) The following day G&G filed a "Notice of Voluntary Dismissal," stating it wished to dismiss defendants "Robert Lee Mealey" and "Foreva Wings." (Doc. 20.) That filing was meant for a different case and G&G withdrew it shortly after it was filed. (Doc. 21.)

As of September 23, 2024, the court had not yet ruled on the motion for default judgment. That day defendants moved to set aside their defaults. (Doc. 23.) Defendants' motion explains they were involved in previous litigation with G&G involving the alleged exhibition of a different boxing match that occurred on March 25, 2023. That litigation was settled, and the settlement amount was paid on June 2, 2024.[1] In July 2024, Acosta received paperwork regarding the present suit involving a boxing match that occurred on April 22, 2024. Acosta shared the paperwork regarding the present suit with the counsel who had represented him in the earlier suit. It is unclear what Acosta's counsel told him but Acosta "was under the impression that the settlement agreement regarding the first claim was a general release to broadly include other potential claims," so Acosta was "confused as to why [he] received a lawsuit when [he] thought the matter was settled and resolved." (Doc. 23-2 at 2.) Acosta later realized the previous settlement did not cover the present claims and obtained new counsel to defend this suit. (Doc. 23-2 at 2.)

Defendants' motion to set aside their defaults argues they have valid defenses to G&G's claims. One defense is that a patron put the boxing match "on TV at the establishment" without Acosta's "permission, consent, involvement, or advance knowledge." (Doc. 23-2 at 3.) Another defense is the customer "used an internet streaming service to receive the signal for the [boxing match]." (Doc. 23-2 at 3.) Defendants believe Acosta's lack of involvement in the display of the boxing program, as well as the signal being displayed using the internet, will prevent liability in this case.

G&G argues setting aside the defaults is not merited because defendants received notice of this suit and they have not offered any convincing explanation for their failure to respond by the applicable deadline. G&G also spends eight pages arguing defendants' planned defenses are not meritorious. Instead of establishing the defenses will fail, however, G&G's opposition shows there is significant uncertainty whether G&G can prevail. For example, G&G argues the use of an internet streaming device will not prevent

---

[1] Defendants state the settlement payment was made in 2023 but that appears to be a typo because defendants also state they received the paperwork for the present suit "a month after settling the first claim." (Doc. 23-2 at 2; *see also* Doc. 23 at 6.) It is undisputed defendants received the paperwork for this suit in July 2024.

- 2 -

liability because the Ninth Circuit has concluded the relevant statutes "on their face . . . do not provide for an 'Internet defense' that automatically absolves an entity of liability." *G & G Closed Cir. Events, LLC v. Liu*, 45 F.4th 1113, 1117 (9th Cir. 2022). But G&G also admits that same opinion explicitly indicates the court was not "reach[ing] this interesting and complicated question" of whether the governing statutes apply to internet streaming. *Id.* at 1115. After acknowledging prejudice is an important factor in determining whether to set aside a default, G&G also fails to offer any argument that it will, in fact, suffer prejudice if the defaults are set aside. (Doc. 24 at 15-16.)

"Rule 55(c) provides that a court may set aside a default for 'good cause shown.'" *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004). When determining if good cause exists, the court looks to three factors:

1) whether defendants "engaged in culpable conduct that led to the default";

2) whether defendants have "a meritorious defense"; or

3) "whether reopening the default judgment would prejudice" the plaintiff.

*Id.* at 925–26. Whether to set aside a default is a discretionary decision and that "discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986). Further, although the court has discretion to deny a request to set aside an entry of default, "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

Defendants were served in early July 2024 and their defaults were entered later that month. Defendants filed their motion to set aside the defaults approximately two months after they were entered. Defendants attribute the delay to confusion regarding the scope of the prior settlement agreement. That is a plausible explanation for some delay. While the present complaint made clear a different boxing match was involved, it was understandable for non-attorneys to be confused given how quickly the new suit was served after the prior suit settled. G&G argues it is implausible defendants were confused, in part because they

were represented by an attorney, but G&G itself has proven it is not immune from confusion; it filed a motion in this case—through its attorney—to voluntarily dismiss parties that are not involved in this suit.

Even accepting defendants do not have an unassailable excuse for failing to respond to the complaint, defendants' actions caused a delay of only two months. That is very minor given that G&G has not indicated much desire to diligently prosecute its claims. After obtaining entry of the defaults, G&G took no action until ordered to do so by the court. And even then, G&G waited until the last possible day to file its motion for default judgment. The absence of culpable conduct combined with the small amount of delay weighs in favor of setting aside the defaults.

The possibility of meritorious defenses also supports setting aside the defaults. In particular, the defense regarding the applicability of the governing statutes to internet streaming devices is a defense worthy of being litigated on its merits. That *G & G Closed Cir. Events,* 45 F.4th at 1117, affirmed a grant of summary judgment against G&G because it failed to produce facts relevant to determining whether the cable and satellite statutes encompass internet transmissions, underscores the potential utility of this defense. And even if the court were to view that defense as weak, the Ninth Circuit has instructed that when "timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945–46 (9th Cir. 1986) (quotation marks and citations omitted).

Finally, there is no indication G&G will be prejudiced if the defaults are set aside. Given a delay of only two months and the type of claims at issue, it is implausible that any crucial evidence has been lost. The only possible harm to G&G is that it will not be able to prevail without being required to litigate the merits of its claims. That form of prejudice is not legally cognizable.

Accordingly,

**IT IS ORDERED** the Motion to Set Aside Default (Doc. 23) is **GRANTED**. The

Entry of Default (Doc. 16) is **VACATED** regarding both defendants.

**IT IS FURTHER ORDERED** the Motion for Default Judgment (Doc. 19) is **DENIED**.

**IT IS FURTHER ORDERED** defendants shall respond to the complaint within fourteen days of this order.

Dated this 11th day of December, 2024.

_____
**Honorable Krissa M. Lanham**
**United States District Judge**